IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

STAND UP DIGITAL, INC., )
)
    Plaintiff, )
)
)
)
v. ) Civil Action No. 1:18-cv-919
)
)
KEVIN DARNELL HART, )
)
    Defendant. )

## MEMORANDUM OPINION

THIS MATTER comes before the Court on the Plaintiff's Motion for Partial Summary Judgment, Plaintiff's Motion to Exclude Defendant's Experts, Defendant's Motion for Summary Judgment, and Defendant's Motion to Exclude Plaintiff's Expert.

Plaintiff, a Virginia corporation in the business of mobile game development, approached Defendant in 2016 with an opportunity to help create and launch a video game called "Gold Ambush." Gold Ambush was a game that would feature the Defendant and his family as the main characters in the game. The gameplay was designed to be a family-friendly and low-violence.

On January 4, 2017, Plaintiff and Defendant executed a Likeness Licensing Agreement (the "Licensing Agreement") wherein Defendant agreed that Plaintiff could use his name and likeness in connection with the marketing, development, and gameplay of Gold

Ambush. Under the Licensing Agreement, Defendant also agreed to use "good faith [and] best efforts" to promote and market Gold Ambush. The Licensing Agreement further states that all services provided by Defendant were to "be performed in a workmanlike manner, and at a level of proficiency to be expected . . . with the background and experience that [Defendant] has represented he has." The Licensing Agreement further states that "except for damages arising from a breach of confidentiality obligations hereunder, willful misconduct, or any other instance where a limitation of liability is prohibited by applicable law . . . no party . . . will be liable to any other party[.]"

In exchange for providing his likeness under the Licensing Agreement, Plaintiff and Defendant also executed a Shareholders Agreement. Under the Shareholders Agreement, Defendant received a seat on Plaintiff's board of directors and Defendant's company, Hartbeat Digital, LLC, received 800 shares of Plaintiff's common stock. The 800 shares of common stock amounted to 20% of Plaintiff's total issued stock. Much like the Licensing Agreement, the Shareholder's Agreement contains a provision stating that "except for damages arising from a breach of [Confidentiality] . . . no party or its affiliates nor its or their directors . . . will be liable to any other party for claims for punitive, special, exemplary, treble, incidental, indirect or consequential damages, including damages for lost profits, loss of use of revenue, or

losses by reason of cost of capital, connected with or resulting from any performance or lack of performance under this agreement, regardless of whether a claim is based on contract, warranty, tort (including negligence), strict liability, violation of any applicable deceptive trade practices act or any other legal or equitable principle."

After executing both agreements on January 4, 2017, Plaintiff continued to solicit investments to develop Gold Ambush. Plaintiff alleges that it spent nearly $1.24 million on the development, promotion, animation costs, consulting costs, legal fees, and other expenses associated with creating the game. Plaintiff scheduled the game to be released to the public on September 18, 2017, and although it did not secure any formal agreements, Plaintiff expected that several online application game stores, including Apple, would "feature" the game once it was released.

Two days prior to the game's launch, on Saturday, September 16, 2017, Defendant posted a one-minute video recording of himself on his Instagram account. In the recording, Defendant apologized to his wife and kids for having done "something wrong" and said that he would not permit "another person to have financial gain off his mistakes." The video went viral and was viewed several million times, and it was widely speculated that Defendant was admitting to having an affair. Following his Instagram video post, various news organizations reported that Defendant was a victim of

3

an attempted extortion relating to an extramarital affair that took place Las Vegas, Nevada. The parties do not dispute that Defendant did in-fact receive an extortion demand between August 25 and August 30, 2017.[1]

After the allegations of an affair went viral, several of the game's promoters stopped marketing the game to their subscribers. Plaintiff alleges that Apple decided not to "feature" Gold Ambush on its app store, causing the loss of potentially millions of game downloads. While it is undisputed that Plaintiff did not have a contract with Apple to feature the game on its app store, Plaintiff argues that the loss of Apple's intention to feature the game resulted in fewer downloads when it was ultimately launched.

After posting the video to Instagram, Defendant told Plaintiff that he thought it would be best to let the scandal "die down" and "go dark" on his social medial accounts. Defendant went forward with the launch on September 18, 2017, and for the following eleven days Defendant did not promote Gold Ambush. Plaintiff argues that Gold Ambush did not perform as well as it should have after it was released. The game is no longer available for download.

In support of its theory that Defendant's failure to disclose or warn it about his intention to "go public" regarding the

---

[1] On May 2, 2018, Jonathan Todd Jackson was charged in Los Angeles County with several crimes relating to the attempted extortion of Defendant.

4

extortion attempt and alleged affair damaged the success of Gold Ambush, Plaintiff offers the expert testimony of Joshua Burns. Burns describes himself as a mobile video game company consultant with 15 years of experience. Burns received a Bachelor of Arts degree in Psychology from Williams College in 2002. Burns' proposed testimony concludes that, due to Defendant's actions, Gold Ambush was "dead on arrival" when it was launched and Plaintiff's expenses in developing the game were rendered a "complete loss." Burns also concludes that Gold Ambush should have been much more successful. According to Burns, but for the actions of Defendant, Gold Ambush would have been downloaded more than 18 million times and brought in approximately $19 million in revenue.

In response to Burns' proposed testimony, Defendant offers two rebuttal experts, Dr. Robert Fenili and Lisa Canty. Dr. Fenili received his PhD in economic from Virginia Polytechnic Institute and State University and was an assistant director at Georgetown Economic Services before starting his own consulting business. Dr. Fenili has been an economist for 44 years, has published numerous peer-reviewed articles, and has been qualified as a damages expert in other cases. Canty has been a software executive for 17 years and has experience in various levels of mobile game app development.

Dr. Fenili's expert testimony responds to Burns' conclusions regarding the expected popularity of Gold Ambush, its expected

5

revenue, and lost profits. Canty's proposed testimony will opine on Burns' conclusions regarding the gaming industry, the development of a mobile game, and potential success of a game.

Plaintiff filed a complaint against Defendant and his business manager, Wayne Brown, on July 24, 2018. Plaintiff amended his complaint on August 7, 2018. Plaintiff's amended complaint alleged that Defendant's failure to disclose or warn Plaintiff about the extortion attempt or intention to "go public" regarding the alleged affair violated his fiduciary duties under Virginia Code §§ 13.1-690 and 13.1-692.1 (Count I) and his common law duties of care and loyalty (Count II). The amended complaint also alleged that Wayne Brown "aided and abetted" Defendant Hart's fiduciary duty violations (Count III) and that Defendant breached the Licensing Agreement by failing to promote and market Gold Ambush (Count IV).

On January 15, 2019, the Court dismissed Count IV for failing to adequately allege a material breach of the Licensing Agreement but allowed Plaintiff to file an amended complaint within 14 days. Plaintiff filed a second amended complaint on January 29, 2019, re-alleging Counts I - IV with additional allegations that Defendant failed to market Gold Ambush "in bad faith." On February 12, 2019, Defendant filed a counterclaim alleging that Plaintiff had an obligation to inform Defendant of any income or profit gained from the sales of the game and to pay Defendant "his portion

of sales and interest on those sales." On August 23, 2019, the Court granted Plaintiff's motion to voluntarily dismiss Wayne Brown and Count III.

Plaintiff moves for partial summary judgment on Counts I and II and Defendant moves for summary judgment on Counts I, II, and IV. Defendant also moves to exclude Plaintiff's expert, Joshua Burns, and Plaintiff moves to dismiss Defendant's rebuttal experts, Lisa Canty and Dr. Robert Fenili. Neither Plaintiff nor Defendant's motions address Defendant's counterclaim.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). This Court finds this case is ripe for summary judgment.

Count I and II of the second amended complaint allege that Defendant violated his statutory and common law fiduciary duties.

Virginia Code § 13.1-690(A) provides that "[a] director shall discharge his duties as a director . . . in accordance with his good faith business judgment of the best interests of the corporation." Virginia Code § 13.1-692.1(A) provides directors with statutory protection from liability unless ". . . the officer or director engaged in willful misconduct[.]" To prevail on a claim of breach of fiduciary duty under Virginia common law, Plaintiff must prove that Defendant had a duty, that Defendant breached that duty, and that damages were sustained. Koschene v. Hutchinson, 73 Va. Cir. 103, 106 (Cir. Ct. 2007)(citing Carstensen v. Chrisland Corp., 442 S.E.2d 660, 666 (Va. 1994)).

Defendant argues that he is entitled to summary judgment on Counts I and II for three reasons. First, Defendant argues that he had no duty to inform or warn Plaintiff that he was going post his Instagram video or that he was a victim of extortion because they were private decisions that did not involve his "taking advantage" of his position as director for Plaintiff. Second, Defendant argues that even if he did have a duty to inform or warn Plaintiff, he is protected by Virginia's business judgment rule. Third, Defendant argues that he cannot be liable to Plaintiff because the Licensing Agreement, Shareholder's Agreement, and Plaintiff's Articles of Incorporation shield him from liability.

As to Defendant's first argument, Plaintiff cites to Virginia case law for the general proposition that a director has a duty to

8

"tell his principal about anything which might affect the principal's decision whether or how to act." Allen Realty Corp. v. Holbert, 318 S.E.2d 592, 595 (Va. 1984); see also August Mut. Ins. Co. v. Mason, 645 S.E.2d 290, 295 (Va. 2007) ("incorporated in every contract between a fiduciary and his principal is an obligation, imposed by law upon the fiduciary, to disclose anything known to him which might affect the principal's decision whether or how to act."). Plaintiff also argues that these duties forbid the director from "placing himself in a position where his individual interest clashes with his duty to his corporation." Rowland v. Kable, 6 S.E.2d 633, 642 (Va. 1940). Relying on these cases, Plaintiff argues that Defendant had a duty to inform or warn it that he was a victim of an extortion attempt and that he intended to post the Instagram video because it would have allowed Plaintiff to postpone the launch date of Gold Ambush.

Plaintiff's argument over-extends Holbert, Mason, and Rowland. Rowland and Holbert involved classic cases of self-dealing, where a director stood to gain personally or financially in direct conflict with interests of the corporation. In Holbert, an accountant for an accounting firm withheld the existence of an offer from the accounting firm's client in favor of an offer from the accountant's friend. Holbert, 318 S.E.2d at 594-95. In Rowland, a director personally profited from a contract with the corporation. Rowland, 6 S.E.2d at 643. In Mason, a fiduciary

9

allegedly breached his duties of loyalty and candor by submitting an insurance claim report containing false information and a forged signature. Mason, 645 S.E.2d at 294. Very significantly, these cases involved decisions made by a director or fiduciary that involved the corporation's business interests on the one hand, and the director's interests on the other. They did not involve a director's private decisions or actions that only indirectly clashed with the corporation's business interests. Defendant's decision to "go public" regarding the extortion attempt was also not one where he stood to gain personally or financially to the direct detriment of Plaintiff. On the contrary, Defendant suffered considerable reputational damage after the allegations of his extramarital affair were made public. Plaintiff cites no authority for the proposition that a director's duties to the corporation prohibit that director from thwarting his extortionist.

Even if Defendant had a duty to inform or warn Plaintiff, Defendant is protected by Virginia's business judgment rule. Virginia's business judgment rule is codified in Va. Code § 13.1-690(A), which provides that "[a] director shall discharge his duties as a director . . . in accordance with his good faith business judgment of the best interest of the corporation." See also Va. Code § 13.1-690(C) ("[a] director is not liable for any action taken as a director, or any failure to take any action, if he performed the duties in compliance with this section."). A

person alleging a violation of § 13.1-690 has the burden of proving the violation. Va. Code § 13.1-690(D).

Virginia's statutory scheme does not abrogate the common law duties of a director, but it does set the standard by which a director is to discharge those duties. Willard v. Moneta Bldg. Supply, Inc., 515 S.E.2d 277, 284 (Va. 1999). The Code thus provides a safe harbor that shields a director from "liability for any action taken as a director and for failure to take action." Willard, 515 S.E.2d at 284. Virginia's business judgment rule presumes that directors have "acted properly and in good faith in the exercise of their business judgment . . . and are called to account for their actions only when they are shown to have engaged in self-dealing[,] fraud, or have acted in bad faith." Giannotti v. Hamway, 387 S.E.2d 725, 731 (1990). The standard is "not measured by what a reasonable person would do in similar circumstances or by the rationality of their ultimate decision[,]" but whether the director acts "in accordance with his [or] her good faith business judgment of what is in the best interests of the corporation[.]" Willard, 515 S.E.2d at 284; Arrowsmith v. Warnick (In re Health Diagnostic Lab., Inc.), Nos. 15-32919, 17-04300, 2018 Bankr. LEXIS 2953, at *14 (Bankr. E.D. Va. Sep. 27, 2018) (whether director violated a fiduciary duty "is a subjective inquiry").

Defendant argues that it is undisputed that he did not engage in self-dealing, commit fraud, or act in "bad faith." For the reasons already stated, Defendant did not engage in self-dealing and there is no evidence that Defendant acted fraudulently. Plaintiff has also presented no evidence that Defendant's failure to warn it regarding the attempted extortion or his Instagram post was in bad faith, and therefore, Defendant is presumptively entitled to protection under Virginia's business judgment rule.

Defendant next argues that he is entitled to summary judgment on Count IV, "Breach of the Licensing Agreement." Plaintiff argues that Defendant breached the Licensing Agreement by failing to use "best efforts" and "good faith" to promote the game. In response, Defendant argues that the undisputed facts show that he did help raise investments to develop the game and did promote the game using some of the Plaintiff's proposed marketing material.

The elements of a breach of contract action are (1) a legally enforceable obligation; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to plaintiff caused by the breach of the obligation. Ulloa v. QSP, Inc., 624 S.E.2d 43, 48 (Va. 2006). Importantly, a "material breach" of contract is a "failure to do something that is so fundamental to the contract that the failure to perform hat obligation defeats an essential purpose of the contract." Horton v. Horton, 487 S.E.2d 200, 204 (Va. 1997); Vienna Metro LLC v. Pulte Home Corp., 786 F. Supp. 2d

12

1076, 1081 (E.D. Va. 2011) (a material breach is "a failure to comply with a fundamental aspect of the contract."). The type of evidence required to establish a material breach of contract "will vary depending on the facts surrounding a particular contract . . . [but] [i]n many cases, a material breach is proved by establishing an amount of monetary damages flowing from the breach." Horton, 487 S.E.2d at 204.

On January 15, 2019, this Court dismissed Count IV for failing to allege any material breach of the Licensing Agreement. Plaintiff's second amended complaint re-alleged Count IV with allegations that to the extent the Licensing Agreement provided discretion as to the amount of marketing required by Defendant, that he refused to market the game "in bad faith." The amended complaint also alleged that Defendant refused to work with Apple to help ensure that Gold Ambush would be "featured" on its app store after the game's launch.

As Plaintiff's counsel conceded at oral argument, there was never any contractual agreement for Apple to "feature" the game on its app store. Plaintiff's expert also acknowledged that Apple never guarantees any type of app placement. There is also no evidence that Defendant acted in "bad faith" or otherwise materially breached the Licensing Agreement's "best efforts" provision. It is undisputed that Defendant did help solicit some of the investments used to fund the development of the game and

13

did use his social media accounts to market Gold Ambush, including by using some of the social media content provided to him by Plaintiff. Because there is no evidence that Defendant materially breached the Licensing Agreement, Defendant is entitled to summary judgment on Count IV.

For the forgoing reasons, this Court finds that Defendant is entitled to summary judgment and that Plaintiff's motion for partial summary judgment should be denied. Plaintiff and Defendant's motions to exclude experts should be denied as moot.

The only remaining claim in this matter is Defendant's counterclaim alleging that Plaintiff "was under contractual obligation to inform Defendant . . . of any income or profit gained from any and all sales of [Gold Ambush]." Defendant's counterclaim appears to be seeking an accounting relating to the income and profit received in connection with Gold Ambush, which is an equitable claim. Va. Code § 8.01-31 (an action for an accounting is "in equity"); see also McClung v. Smith, 879 F. Supp. 1384, 1400 (E.D. Va. 1994) ("Under Virginia law, an accounting is a form of equitable relief which is available upon order of a court in equity providing for an accounting of funds among those with a partnership or other fiduciary relation inter se."). Accordingly, this case should proceed to trial without a jury on Defendant's counterclaim for an accounting. Yadkin Valley Bank & Trust Co. v.

did use his social media accounts to market Gold Ambush, including by using some of the social media content provided to him by Plaintiff. Because there is no evidence that Defendant materially breached the Licensing Agreement, Defendant is entitled to summary judgment on Count IV.

For the forgoing reasons, this Court finds that Defendant is entitled to summary judgment and that Plaintiff's motion for partial summary judgment should be denied. Plaintiff and Defendant's motions to exclude experts should be denied as moot.

The only remaining claim in this matter is Defendant's counterclaim alleging that Plaintiff "was under contractual obligation to inform Defendant . . . of any income or profit gained from any and all sales of [Gold Ambush]." Defendant's counterclaim appears to be seeking an accounting relating to the income and profit received in connection with Gold Ambush, which is an equitable claim. Va. Code § 8.01-31 (an action for an accounting is "in equity"); see also McClung v. Smith, 879 F. Supp. 1384, 1400 (E.D. Va. 1994) ("Under Virginia law, an accounting is a form of equitable relief which is available upon order of a court in equity providing for an accounting of funds among those with a partnership or other fiduciary relation inter se."). Accordingly, this case should proceed to trial without a jury on Defendant's counterclaim for an accounting. Yadkin Valley Bank & Trust Co. v.

McGee, 5 F.3d 750, 757 (4th Cir. 1993) (there is "no right to trial by jury where equitable rights and remedies alone are at issue.").

                                                 /s/ Claude M. Hilton
                                             CLAUDE M. HILTON
                                             UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
November 22, 2019